The bill, answer, and proofs, (by commission,) present the following facts, viz: Gen. Samuel Elbert, of Georgia, died, in 1788, seized of several tracts of land, in Fairfield district, of this State, viz : One tract of 400 acres ; another of 150 acres; and a tract of 416 acres, all of which are more fully described in the answer, and in the deeds by which they were conveyed to the defendant. Gen. Elbert left the following persons, his children and heirs at law, viz: Sarah Elbert, Samuel Elbert, Catharine Elbert, who intermarried with John Burke, Mathew Elbert, who died in his minority, and Elizabeth Elbert, through whom the present complainants claim. She intermarried with Dr. Michael Burke, in 1799, being, then, 20‘years of age, and died in’1804. She left two daughters, by Dr. Burke, viz: Catharine, who was of age, about 16th June, 1823, and intermarried with the complainant, Thomas T. Holt; *476 and Elizabeth, who was of age, in June, 1824, and intermarried with the complainant, John Kerr. Dr. Michael Burke survived his wife, leaving the two daughters above named, and, by another ventre, a son, Robert Burke, his heirs at law. Gen. Elbert, by his will, devised his real estate, to be divided among his children, their shares to be apportioned to them, as the females shall respectively marry, or attain the age of 21. On the 9th January, 1810, Samuel Elbert, his son, acting for himself, and as attorney in fact, for his sister, Sarah Elbert, and as guardian of his niece, Eliza M. Burke, sold and conveyed to the defendant, Benoni Robertson, the two tracts of 400 acres, and 150 acres; and on the 27th March, 1811, he sold and convey-to the defendant, the tract of 416 acres, in his own right, and as guardian of his said neice, Eliza M. Burke. The defendant took possession, and began to cultivate upon the tracts of 400 acres, and 416 acres, about the 1st January, 1813 ; and has continued to cultivate to the present day. The bill is filed by the children of Elizabeth Elbert, who married Dr. Michael Burke, for partition, and an account of the rents and profits. This claim is resisted by the defendant; first, upon the ground, that the complainants are barred by the statute of limitation. Elizabeth Burke, the mother of the complainants, died, in 1804, or 1805. One of the complainants attained 21 years, in 1823, and the other in 1824, or 1825, and the bill was filed on the 13th September, 1827. The complainants are, therefore, protected by their minority, from the operation of the statute. They were inhabitants of Georgia. The next ground assumed by the defendant is, that as the will of Gen. Elbert directed, that the devisees should receive their shares of his estate, as they respectively married, or attained 21 years of age, it is to be presumed, after this lapse of time, partition was actually made, and that these lands were assigned to Samuel Elbert, and Sarah Elbert, and their neice, Eliza M. Burke, who undertook to convey them to the defendant; or that, at all events, complainants received compensation from Samuel Elbert, for their shares of the lands he sold. There is no evidence; that such partition was made; if it had been made, some proceedings, or written documents must exist, furnishing the proof *477 of it; but none such are produced, and Sarah Elbert, who must have known of it, if it had been made, was examined by commissioners, on behalf the defendant, and does not prove it. It seems to be probable, that these lands, lying at a distance, and in another State, were overlooked; at all events, presumptions are not to be strained against parties, who were minors,, during all the period upon which the presumption is built. The deeds of Samuel Elbert, conveying the land, do not recite such partition, or any surrender of their rights, on the part of the complainant ; and the evidence taken in Georgia, lends no support to the presumption, attempted to be raised. Nor is the other ground taken by defendant, to wit: that Samuel Elbert compensated complainants for their share of the lands sold, better sustained. On the contrary, Sarah Elbert, in answer to the 10th interrogatory, put to her by defendant, says, that Samuel Elbert made no such compensation, to her knowledge; and the other ■ Georgia witnesses see no reason why complainants should not have their share of this land. I conclude, then, that the complainants are entitled to the partition sought. The next points made in the case, grow out of the report of the Commissioner, as to the rents and profits, and the exceptions thereto. About 50 acres of land were cleared, when the defendant took possession, and he states in his answer, that he cleared about 110, or 120 acres, himself. Most of this land was cultivated by defendant, from January, 1813, until the present period. Part of the land, when exhausted, was turned out and used only for pastures. The Commissioner has reported the rent of the 50 acres, which the defendant found cleared, at $611 75 cts., which embrace the interest, up to the 16th July, 1830; and he has reported the rents of the part which was cleared by the defendant, with interest, at $744,52.
The defendant excepts to the Commissioner’s report: 1st. Because, if he is tenant in common, with complainants, he is, nevertheless, not bound to account for the rents and profits. But, by the statute, 4 Ann Ch. 16, (P. L. 97,) one tenant in common is bound to account to another for receiving more, than comes to his share, and although it is true, that the defendant did not cultivate a greater num *478 ber of acres, than he is entitled to, yet he cultivated the whole of the cleared land, to the exclusion of his co-tenants. He used all that was susceptible of use ; nor is it any answer, to say, that the complainants might háve cleared and cultivated any other part of the land. They had no right to cut down whole forests, for this would be waste. This subject has recently undergone investigation in the ' case of Hezekiah Thompson et al. vs. John Bostick et al. in which Chancellor Harper maintains the doctrine just stated. • A more difficult question arises, as to the rent of the land, cleared by the defendant himself. As the defendant would have no right to call upon the complainants to contribute to the expense of such clearing, and improvements, it would seem, that the complainants have no right to share in the profits, resulting from such improvements. But the Commissioner has ascertained, by evidence, that three years use is a full compensation for the clearing of such lands; and, accordingly, in computing the rents and profits, he has made no charge for the three first years. The lands are there, and it is in evidence, that they were much deteriorated by the defendant’s long cultivation. The-complainants are, therefore, entitled to an account of the rents, after the three first years; and the more especially, as the clearing itself, by defendant, was unauthorized, and was an act of waste, for which he is accountable. The first exception, on the part of the defendant, is, therefore, overruled. 2d. The defendant excepts to the charge of rent, because he offered, and is willing to take the land cultivated, in his distributive share. But if the complainants may be compelled to accept this offer, theu, it would always be in the power of the tenant in common, to select for himself, such part of the lands, as he chose to have. Besides, it may not be practicable, in the partition, to make such allotment; as for example, if the cultivated lands should occupy the centre of the tract. Nor is it known, that partition will be awarded. The Commissioner may find it necessary to recommend a sale. Thé exception proceeds upon the ground, that the claim for rent is based, exclusively, upon the fact, that the land cultivated by the defendant, has been worn out in the use. But this is a mistake. The 2d exception is overruled. The 3d ex *479 ception is, because defendant ought not to be charged with interest, or rent; or if charged at all, only since the institution of this suit. This question, also, arose in the case of Thompson vs. Bostick, before cited ; and the rule is there correctly laid down, viz: “that interest is payable on rent, from the time it is due, and is always allowed in this Court.” The defendant’s 3d exception is overruled. The complainants’ 1st. and 2d. exceptions are, that the Commissioner has underrated the quantity of land in cultivation, and has allowed too little for the rent. The Commissioner is sustained by the weight of the testimony, and these exceptions are overruled. The complainants’ 3d. exception is, because the allowance for the use of the land, for three years, rent free, as a compensation for the clearing, is exhorbitant. One witness thinks two years use, rent free, would be a proper allowance ; but Mr. Alston, who surveyed the land, and Mr. Beckham, who made the clearing, for the most part, concur in saying, that three years use is a fair allowance. It is, probably, a liberal compensation, but it is not exorbitant; and this exception is overruled. The report of the Commissioner is confirmed, except as modified above; and it is ordered and decreed, that a writ of partition do issue, to divide the lands before mentioned, between the complainants, and the defendants, Benoni Robertson, and Robert B. Burke; assigning to the said Benoni Robertson three fourths of the said land; and dividing the remaining one fourth part among the other parties, in the following proportions,- to wit: to Thomas T. Holt, and Elizabeth Ellen Holt, four-ninths ; to John Kerr, and Catharine R. Kerr, four ninths; and the remaining, one ninth part, to Robert Boetins-Burke. But if such partition cannot be advantageously made, and it shall appear to the Commissioners appointed to divide the said lands, that it is for the -interest of the parties, that a sale thereof should be made for partition, they, or a majority of them, are required to make a return accordingly. It is further ordered and decreed, that of the sum of thirteen hundred and fifty-six dollars, and twenty-five cents, reported by the Commissioners, as the whole amount of the rent, and interest thereon, the defendant^ Benoni Robertson, do pay one-fourth part, to wit, the sum *480 of $339, in the following manner, to wit; 301 dollars and 34 cents, to the complainants, Thomas T. Holt, and Elizabeth, his wife, and John Kerr, and Catharine R. his wife; and the further sum of 37 dollars, and 66 cents, to Robert B. Burke, together with interest, on the said one fourth part of the rents, from the 16th day of July, 1830. The costs of the suit to be paid by the defendant, Benoni Robertson.
Curia, per Harper, J.
We have no doubt, with respect to the two first grounds of appeal. If Samuel Elbert, with his sister, Sarah, and neice, Eliza M. Burke, had been long in possession of the land, or had exercised the rights of ownership over it, during the life time of Mrs. Elizabeth Burke, and after she came of age, the presumption, contended for, might have arisen, that Mrs. Burke, had received her share of the estate, leaving the land in question to other distributees; on the principle of thé case, .of Reed vs. Price, State Rep. 1, where, after a lapse of 27 years, the distribution of personal estate was presumed, though no administration was shown, and that slaves, which had been so long in the possession of one of the dis-tributees, had been allotted to her, as her distributive share. But Samuel Elbert never had possession of the land in this case, or exercised any act of ownership over it, until his sale to the defendant, in 1810. Up to that time, it might as well have been presumed, that he had received his share of the estate, leaving the land question, to Mrs. Burke. At the time of the sale, Mrs. Burke was dead, and the complainants, her heirs, were infants, and unmarried; so that, until within three, or four years, of the filing of the bill, they were tenants in common, with the defendants. I do not know of any principle, on which it could be presumed, thát Samuel Elbert paid over to the complainants, their shares of the purchase money of the land. It does not appear, that he sold the land, as their agent, nor did he profess to sell it, in that character. He sold for himself, his sister Sasah, and his niece, Eliza M. Burke; for, on these points, we concur with the Chancellor. The principal question relates to the rents of the land, as charged by the Commissioner. On this subject, *481 I have had occasion to give an opinion, in the case of Thompson vs. Bostick, decided by' ns, during the present •sitting, in which, the decree was delivered by myself. . I refer to that opinion, as expressing my views. As to the land, which was cleared and prepared for cultivation, at the time defendants took possession of it, he must account to complainants for their share of the rent. This was the only portion of the- property, capable of producing rent when he took possession. But, with respect to the land •cleared by.himself, he is not to be charged with rent. • I cannot conceive, that a tenant in common can be said to have used and occupied more than his share of the land, (and it is by using and occupying, that he is said to have received rents and profits, according to the terms of the statute, of 4th Ann,) when, being entitled to three fourths óf a wooded tract of land, he has taken, possession of, perhaps, one third, fitted it for cultivation, and used it. At •common law., and -independently of the statute, he could not be made to account, though he had occupied the whole, it was accounted the .folly of the tenant, out of possession, that he did not enter and receive his share of rents and profits. On equitable principles, I think, he has less claim. The land was rendered capable of producing rent by the labor, and expense, of the tenant in possession. In this.country, the valúe of land is, generally, very much enhanced, by clearing a portion of it;. and it is enough for the tenant, who has been out of possession, to gain that, advantage, when he chooses to enter, or claim partition. Or, if the land be deteriorated, he sustains no injury; for he may recover to the extent of the deterioration, as for waste. In any case, where a party has been in possession of land, belonging to another, and is called to account for rents and. profits, or where damages’are claimed in a suit for the land, more especially > if he took possession in good faith, and believing himself to have title, the rent, or damages, ought to be estimated with reference to the condition of the land, when he took possession. -It would be unconscionable to charge him with rent, which the land was rendered capable of producing, by. his own labor and expense. In this case, too, if the land were injured, that would enter into the estimate of dántages. If, upon demand *482 by the co-tenant, to be let into possession, he should bo resisted and held out by the tenant in possession, then it might be proper, that- the rents and profits should, henceforth, be estimated, with reference to the improved condition of the premises, at the time of demand. I see no reason of policy, or convenience, to incline us to a different view of the subject. In this country, it is rather desirable that persons should be encouraged to put wild lands in order for cultivation. By doing so, the tenant in possession is likely to render a benefit to his co-tenant, and can, in no case, do him an injury. The decree of the Chancellor, is, therefore, so far modified, as to sustain the exception, to so much of the Commissioner’s report, as charges the defendant with the rent of the land, cleared by himself. If the complainants desire it, a reference to the Commissioner may be had, to enquire whether the land has been injured, and to what extent, by the defendant’s clearing and cultivation.
Mr. Pearson suggests, that in the case of Holt and wife vs. Robertson, there has been an omission to make an order on the subject of costs. I incline to think he is correct; but the Judges, who now constitute the Court, must determine, whether an alteration shall be made.
WM. HARPER.